## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BILLY RAY RISLEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-2081 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, Billy Ray Risley, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2004 state felony conviction for aggravated assault with a deadly weapon. Respondent filed a motion for summary judgment, (Docket Entry No. 11), with a copy of the state court record. Risley filed a response, (Docket Entry No. 13), and his own motion for summary judgment. (Docket Entry No. 16). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants respondent's motion for summary judgment and denies Risley's motion. By separate order, this court enters final judgment. The reasons are set out below.

## I.      Background

A jury in the 232nd District Court of Harris County, Texas found Risley guilty of the felony offense of aggravated assault with a deadly weapon. (Cause Number 966167). Risley pleaded not true to enhancement paragraphs alleging prior convictions for aggravated robbery (Cause Number C74-11690-HK) and for possession of a weapon by a felon (Cause

Number 205777D).  On June 29, 2004, the court sentenced Risley to thirty years in prison. The First Court of Appeals of Texas affirmed Risley's conviction on June 9, 2005.  *Risley v. State,* No. 01-04-00732-CR (Tex. App. -- Houston [1st Dist.] 2005, pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused Risley's petition for discretionary review on January 25, 2006.  Risley filed a state habeas application on February 17, 2006.  The Texas Court of Criminal Appeals dismissed the application on May 31, 2006 because the direct appeal was pending.  *Ex parte Risley,* Application No. 27,576-11 at cover.  Risley filed a second application for state habeas corpus relief on July 3, 2006.  The Texas Court of Criminal Appeals denied this application without written order, on findings of the trial court, without a hearing, on June 6, 2007.  *Ex parte Risley,* Application No. 27,576-13 at cover.

On June 21, 2007, this court received Risley's federal petition.  Risley contends that his conviction is void.  There are three categories of contentions:

(1)     Trial counsel, Mario Madrid, rendered ineffective assistance by:

    a.     failing to object to the complainant's perjury;

    b.     failing to object to the complainant's testimony about what another witness, identified as a restaurant manager, told the police;

    c.     failing to object to a suggestive pretrial identification;

    d.     failing to conduct adequate pretrial investigation by:

        1.     failing to interview the complainant;

        2.     failing to interview a witness named Jerry;

3. failing to interview the restaurant manager;

4. failing to hire an investigator to locate these witnesses; and

5. failing to obtain medical records;

e. failing to file pretrial motions including:

1. a motion to proceed *pro se*;

2. a motion for discovery;

3. a motion to obtain medical records;

4. a motion in limine; and

5. a motion for a speedy trial;

f. vouching for the truthfulness of the complainant's testimony in his closing arguments;

g. withdrawing without filing a motion for new trial and denying him counsel for purposes of filing such motion;

h. failing to object to the prosecutor's closing arguments that referred to Risley's failure to testify, played on the fears of citizens, and vouched for the truthfulness of the State's witness;

i. failing to raise a *Batson* challenge at voir dire; and

j. failing to object to the evidence introduced regarding his prior convictions.

(2) Appellate counsel, David Suhler, rendered ineffective assistance by:

       a.      failing to raise claims regarding the complainant's hearsay testimony, suggestive pretrial identification procedures, or the enhancement paragraphs or evidence introduced to prove the priors; and

       b.      making statements in the appellate brief that were not true and were designed to mislead the court.

(3)    Risley was improperly denied an evidentiary hearing during his state habeas proceedings.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7).

The respondent argues that claims 1A, 1C, 1D4, 1D5, 1E3, 1E4, 1G, 1H, 1I, 1J, and 2A are unexhausted and procedurally barred.  (Docket Entry No. 11, Respondent's Motion for Summary Judgment, p. 3).  The respondent also argues that the remaining claims lack merit.  Risley moves to dismiss his unexhausted claims.  (Docket Entry No. 13, Petitioner's Response, p. 11).

## II.     Factual Background

The indictment charged that "in Harris County Texas, Billy Ray Risley, hereafter styled the defendant, heretofore on or about October 26, 2003, did then and there unlawfully, intentionally, and knowingly threaten Francisco Alvarez with imminent bodily injury by using and exhibiting a deadly weapon, namely, a knife." *Ex parte Risley,* Application No. 27,576-13 at 210.

At trial, the prosecution called two witnesses, the complainant, Francisco Maldo Alvarez, and the arresting officer, Anthony Alcantara.  The complainant, Alvarez, testified

through an interpreter.  Alvarez stated that he was forty-five years old, had immigrated from El Salvador, and had lived in the United States for twenty-three years.  (Reporter's Record, Vol. III, p. 10).  He was a machine operator and worked the night shift.  (*Id*. at 11).  Alvarez testified that on October 26, 2003, he went to have dinner at a restaurant called "La Pupusa Loca."  While eating his dinner, Alvarez heard the burglar alarm on his van go off.  Alvarez went outside to investigate and saw a man later identified as Risley trying to open the van door.  (*Id*. at 12).  Alvarez asked Risley, in English, what he was doing.  Risley asked Alvarez if the van belonged to him.  (*Id*. at 13).  When Alvarez answered affirmatively, Risley said, "I'm going to kill you."  Alvarez asked why.  Risley replied, "because I am a Vietnam Veteran."  (*Id*. at 13-14).  Risley pulled a knife from a package he was holding. Alvarez began to run.  The knife passed close to his head.  (*Id*. at 14).  Alvarez looked back and saw that Risley was coming after him.  (*Id*. at 42).  Alvarez testified that it would have been possible for Risley to have picked up the knife.  Alvarez did not look back because he was running toward a gas station to call the police.  (*Id*. at 43).

Alvarez described the knife as looking like a kitchen knife used for chopping vegetables, silver-colored and sword-like, not like a butter knife.  Alvarez testified that the knife went past him and landed in the grass on the other side of the street.  (*Id*. at 16). Alvarez ran to a public phone on the corner and called 911.  The police arrived five minutes later.

Alvarez testified that while he was describing what happened to the police officer, the manager from the restaurant told the officer that Risley had attacked him as well.  (*Id*. at 17).

5

Alvarez gave the officer a description of the assailant.  Alvarez testified that he saw the police officers find Risley in a nearby shopping center, about a block from where the incident took place.  Alvarez testified that he heard Risley tell the officer handcuffing him, "don't hurt me, because I am a Veteran."  Alvarez testified that he did not see any other man with a beard, a bag, and clothing similar to Risley's.  When the arrest occurred, there were no other people in the area, only parked cars.  (*Id*. at 43).  Alvarez directed the police to where he thought the knife might be, but the police were unable to find it.  (*Id*. at 18).

On cross-examination, defense counsel asked about: the time of the incident; whether Alvarez told the officer that Risley was wearing glasses; the description Alvarez gave; the trajectory of the knife and where it fell; the presence of people in that intersection; whether the police took fingerprints from the van; whether Alvarez identified Risley when he was in the police car with handcuffs; how Alvarez reacts under pressure; and whether Alvarez told the officer that Risley had a beard or mustache.

On redirect examination, the prosecutor established that Alvarez had no prior experience with the court system.  Alvarez stated that he had no doubt that Risley was the same person he identified to the police fifteen minutes after the incident.  (*Id*. at 44).  Alvarez testified that Risley appeared to be drunk or on drugs.  Risley was struggling while the officer was placing him in handcuffs.  (*Id*. at 45).  Alvarez testified that State's Exhibit 2 was an accurate photograph of Risley on the night of the incident.  (*Id*. at 51).

Anthony Alcantara, a Houston Police Department officer, testified that on October 26, 2003, at 4:57 p.m., he received a dispatch to go to 2278 Gessner to respond to a robbery

report.  (Reporter's Record, Vol. III, pp. 55-56).  Alcantara arrived on the scene at 5:01 p.m. and met Alvarez at the gas station.  (*Id*. at 57).  Alvarez gave Officer Alcantara a description of the suspect.  Alcantara stated that Alvarez was standing next to his vehicle and flagged the officer down.  Alvarez told Officer Alcantara that someone had pulled a knife on him and pointed toward the parking lot.  Officer Alcantara made a general broadcast of the description Alvarez provided.  (*Id*. at 58).  Another officer found Risley next to a fast-food restaurant nearby.

Once Risley was in custody, Officer Alcantara searched him and the area.  Alcantara testified that from the time he spoke with Alvarez to the time he located Risley, at most ten minutes had elapsed.  (*Id*. at 59).  Officer Alcantara brought Risley back to the scene. Alvarez identified Risley without any hesitation.  Officer Alcantara determined that a line-up was unnecessary given that Alvarez identified Risley with certainty.  The description Alvarez provided matched Risley's appearance.  Officer Alcantara stated that State's Exhibit 2 accurately depicted Risley on the date of the offense and that no other people resembling Risley were in the area.  (*Id*. at 61).

Risley was loud and belligerent when the officers approached him and verbally abusive while he was in the patrol car.  Officer Alcantara thought Risley was intoxicated. Alcantara and other officers searched the parking lot and surrounding area for the knife.  (*Id*. at 62).  Alcantara testified that in robberies, it is rare to recover the weapon.  (*Id*. at 64).

On cross-examination, counsel asked Alcantara about his familiarity with the area where Risley was arrested; where Alvarez was when Alcantara first made contact with him;

whether the area was a busy intersection; the area he searched for the knife; the description of the suspect; Risley's demeanor at the time of arrest; and whether anyone approached Alcantara and said they witnessed the incident.

## III.    The Issue of Exhaustion

The respondent argues that claims 1A, 1C, 1D4, 1D5, 1E3, 1E4, 1G, 1H, 1I, 1J, and 2A are unexhausted and procedurally barred.  (Docket Entry No. 11, Respondent's Motion for Summary Judgment, pp. 4-5, 7-9).  Risley moves to dismiss his unexhausted claims. (Docket Entry No. 13, Petitioner's Response, p. 11).

Although the respondent argues that a number of Risley's claims are unexhausted, Risley did raise several of these claims in the state habeas application he filed.  Risley did not raise claim 1H, which alleged that the prosecution had referred to Risley's failure to testify, had played on the fears of the citizens,or had vouched for the credibility of the State's witnesses, in his state application.  This claim is not exhausted.

A state prisoner must exhaust all available state court remedies before he can obtain federal habeas corpus relief unless the state corrective process is ineffective to protect the prisoner's rights.  28 U.S.C. § 2254(b) & (c); *see Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989).  To exhaust, a petitioner must "fairly present" all of his claims to the state court.  *Picard v. Connor*, 404 U.S. 270 (1981).  The claim must be presented to and ruled on by the *highest* state court, which in Texas is the Court of Criminal Appeals.  *Richardson v. Procunier*, 762 F.2d 429 (5th Cir. 1985).  This may be accomplished by filing a petition for the writ of habeas corpus in the district court pursuant to Article 11.07 of the Texas Code of

Criminal Procedure, and then appealing to the Texas Court of Criminal Appeals. A federal habeas corpus petitioner fails to exhaust his state remedies when he relies on a different legal theory than he did in state court or when he makes the same legal claim to a federal court but supports the claim with factual allegations that he did not make to the state courts. *Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir. 1987); *Knox v. Butler,* 884 F.2d 849, 852 n.7 (5th Cir. 1989), *cert. denied,* 494 U.S. 1088 (1990).

Claim 1H is unexhausted and procedurally barred. (Docket Entry No. 11, Respondent's Motion for Summary Judgment, p. 3). Risley moves to dismiss his unexhausted claims. (Docket Entry No. 13, Petitioner's Response, p. 11). "[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims." *Rhines v. Weber,* 544 U.S. 269, 276 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). Risley's motion to dismiss this unexhausted claim is granted.

## IV.    The Applicable Legal Standards

Risley's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).  The court must look "through the prism of AEDPA deference."  *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's

10

conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000).  A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495.  In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as

to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Risley is *pro se*.  In this circuit, *pro se* habeas petitions are construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers.  *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Risley's state and federal habeas petitions.  *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## V.    The Claim of Ineffective Assistance of Trial Counsel

To succeed on a claim of ineffective assistance of counsel, a habeas corpus petitioner must first show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  The standard requires the reviewing court to give deference to counsel's performance, strongly presuming that counsel exercised reasonable professional judgment.  *Id*. at 690.  Counsel's performance is deficient only when his "representation [falls] below an objective standard of reasonableness."  *Id*.  The court measures reasonableness against prevailing professional norms, viewed under the totality of the circumstances.  *Id*. at 688.  "Judicial scrutiny of counsel's performance is highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*.

12

at 689.  The Sixth Amendment does not guarantee an accused "errorless representation." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (citing *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983)).

The habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  He must "affirmatively prove," not just allege, prejudice.  *Id*. at 693.  If he fails to prove the prejudice component, the court need not address the question of counsel's performance.  *Id*. at 697.  Strategic decisions by counsel generally do not provide a basis for habeas corpus relief.  *See Strickland*, 460 U.S. at 689.

Risley asserts that trial counsel rendered ineffective assistance at trial in several respects.  The state habeas court found:

> 1.  The applicant fails to show that trial and appellate counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.
>
> 2.  The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Risley,* Application No. 27,576-13 at 158-159.  Each of the areas Risley alleges as ineffective assistance is examined below.

13

1.      **The Claim of Failure to Object to Perjury**

Risley contends that Alvarez knowingly gave false testimony and that defense counsel was ineffective for failing to object to such perjury or impeach the witness.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 5-6, 8).

Texas law provides:

> (a)  A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:
>
> (1)  he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or
>
> (2)  he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code.
>
> (b)  An offense under this section is a Class A misdemeanor.

TEX. PENAL CODE ANN. § 37.02 (Vernon Supp. 2008).

A person commits aggravated perjury when:

> (a)  A person commits an offense if he commits perjury as defined in Section 37.02, and the false statement:
>
> (1)  is made during or in connection with an official proceeding; and
>
> (2)  is material.
>
> (b)  An offense under this section is a felony of the third degree.

TEX. PENAL CODE ANN. § 37.03 (Vernon Supp. 2008).

During defense counsel's cross-examination of Alvarez, the following exchange occurred:

14

> Q.     Were you here when we were picking a jury and the judge was standing over here and this man across here was standing up here with about 60 people in here earlier?
>
> A.     No.
>
> Q.     You were never outside that window looking in that window?
>
> A.     I peeped in because it was about 2:00, and I didn't know what time I was going to be in here.

(Reporter's Record, Vol. III, pp. 21-22).

Risley claims that Alvarez's first answer constituted perjury.  But Risley has not shown that the answer was false or that Alvarez intended to mislead counsel.  The first question was somewhat unclear as to what counsel meant by "Here."  The word could have meant either in the courthouse or in the courtroom.  Risley does not contend, and nothing in the record suggests, that Alvarez was in the courtroom during voir dire.  Counsel then asked a more precise question, whether Alvarez was outside the courtroom and had looked in through the window.  Alvarez answered this second, clearer, question affirmatively.  These answers are not contradictory.

Defense counsel then asked Alvarez whether he had identified Risley based on the fact that he had seen Risley sitting at the defense table next to defense counsel.  (*Id*. at 22-23).  Counsel again asked if Alvarez had looked in through the window and had seen Risley sitting next to his counsel.  Alvarez responded that he had been looking for the prosecutor with whom he had previously spoken.  Alvarez said he saw some gentlemen but he did not recognize them.  (*Id*. at 24).  Defense counsel then moved to another line of questioning.

15

The record does not show that Alvarez knowingly gave false testimony.  Defense counsel made the tactical decision to try to impeach Alvarez by questions suggesting he had an opportunity to observe Risley through the window before trial.  Counsel tried to show the jury that Alvarez's identification of Risley was suspect.  There is no basis to show that Alvarez gave perjured testimony or that counsel's approach was deficient or that it created prejudice.  Risley cannot show that any objection to Alvarez's testimony, if made, would have been sustained.  Risley is not entitled to federal habeas corpus relief on this claim.

## 2.    Failure to Object to Hearsay Testimony

Risley asserts that defense counsel was ineffective for failing to object to Alvarez's testimony about the statements the restaurant manager made to the police.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 7-9).  Alvarez testified, ". . . I was explaining to the officer what had happened.  And at that moment the restaurant manager came and told the officer that this person over here was the one that attacked him."  (Reporter's Record, Vol. III, p. 17).

On cross-examination, defense counsel questioned Alvarez, as follows:

> Q.    Do you remember the police looking around to see other witnesses to see if they saw what happened?

> A.    He spoke to the restaurant manager.

> Q.    If you could just look here at the model of the restaurant.  This is the restaurant, correct?

> A.    Okay.

> Q.    You parked over here?

16

A.    On here, on the opposite corner.  The restaurant is here on the opposite corner.

Q.    Could you see on the outside of the restaurant to the side of your van?

A.    No.

Q.    And you said the manager identified the person that threw this knife?

A.    What's more he told the policeman that that person was there.

Q.    And, yet, by your own testimony you couldn't see the van from inside the restaurant?

A.    No.

Q.    So, the manager could not have identified some person that threw a knife at you, could he?

A.    The manager had received threats from him.  He had also told him he was going to kill him.  So, then he left.  The manager followed and he saw that I was with a policeman and the manager told the policeman: Look this is the person that attacked him.  And then he came to threaten me.

Q.    Had the manager called the police before that then?

A.    I don't think so because when he saw the policeman with me, he ran towards us.

Q.    I am talking before this day you said some kind of threat had been made?

A.    No, that was on the same day.

Q.    You said he made threats the same day?

17

A.      That same day.

Q.      Did he call the police that same day?

A.      He explained to the policeman that he, too, had been threatened.
. . .

Q.      When – did the police ever take you over to identify the person you said threw a knife at you?

A.      No.

Q.      Then how do you know that that was the man that they arrested?

A.      Because the restaurant manager and myself told him that that was the person.

Q.      What if there was a different person that had threatened the manager prior and there was a different person that threw the knife?  Is it possible that it could have been two different people?

A.      No, because if the manager sees him, he's going to recognize him and say he's the same person that threatened him.

Q.      I understand the manager said he saw someone threaten him and I also know that you said you can't look out the restaurant at your van from where the manager would have been.

A.      What happened was that when the manager saw me get up, leaving my food, and that I went outside, he heard the alarm and he saw me running when this man was chasing me.  And then he came back because he saw that I had been at the restaurant.  And he went back and told the manager that he
. . .

(Reporter's Record, Vol. III, pp. 29-32).

Risley argues that defense counsel should have objected to Alvarez's description of what he heard the restaurant manager say. Under the Sixth Amendment, a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'" *Cruz v. New York*, 481 U.S. 186, 189 (1987) (quoting U.S. Const. amend. VI). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 68 (2004). The Supreme Court explained in *Crawford* that "the Confrontation Clause . . . applies to 'witnesses' against the accused – in other words, those who 'bear testimony,'" *id*. at 51, 124 S. Ct. 1354, and that "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class." *Id*. at 53. The Court reiterated in *Crawford* that although it was "leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial' . . . [w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68, 124 S. Ct. 1354.

The Confrontation Clause bars testimonial statements of a witness who does not appear at trial unless: (1) he was unavailable to testify; and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford,* 541 U.S. at 59. The record does not reflect that Risley had any prior opportunity to cross-examine the restaurant manager.

There was no evidence other than Alvarez's testimony that anyone but Alvarez talked to the police about Risley on the night of the incident.  Defense counsel stated in his affidavit that he reviewed the prosecutor's file, which included the police report. The police report contained a detailed account of what Alvarez told the police.  *Ex parte Risley*, Application No. 27,576-13 at 150.  The police report did not state that the restaurant manager also identified Risley.  There was no statement from anyone but Alvarez and no reference to any restaurant manager.  The State called only two witnesses, Alvarez and the arresting officer. During voir dire, the prosecutor emphasized that there was only one eyewitness.

Defense counsel's strategy was to show that Risley did not commit the assault Alvarez described.  *Ex parte Risley*, Application No. 27,576-13 at 152.  To this end, counsel sought to discredit Alvarez's testimony by pointing out discrepancies in his testimony and the absence of a weapon.

The only testimony about a restaurant manager came from Alvarez.  From his review of the police report, defense counsel knew that there was no witness statement from a restaurant manager.  Counsel made a strategic decision not to object to Alvarez's hearsay testimony about what the restaurant manager told Officer Alcantara.  Instead, counsel impeached Alvarez by questioning Officer Alcantara, who testified that no witness ran up to tell him about the offense.  (Reporter's Record, Vol. III, pp. 29-33, 81-82).  This was in direct conflict with Alvarez's testimony concerning the restaurant manager.

In closing, defense counsel argued that:

> Mr. Alvarez, you have to completely discount that he says there
> was some other witness out there to bolster his claim, that ran
> across the parking lot.  The police said they never saw any
> witnesses out there.  I would think that the witness would have
> been at the scene.  I asked who was at the scene.  He said there
> was one other officer at the actual scene of the arrest and there
> were a couple more officers down the road.  There weren't any
> witness statements taken.  I don't know if that person was there
> or not, but that person certainly did not identify this person.

(Reporter's Record, Vol. III, pp. 97-98).

Risley has not shown that counsel's performance was deficient for following a strategy of discrediting Alvarez and failing to object to Alvarez's hearsay testimony.  Even if counsel was deficient for failing to object to this testimony, *Strickland* requires that a petitioner show both deficient performance and prejudice.  Risley has failed to show the prejudice because he has not shown that the outcome of trial would have been different had counsel made the objection.

Risley is not entitled to federal habeas corpus relief on this claim.

### 3.    Failure to Object to a Pretrial Identification Procedure

Risley asserts that the prosecutor allowed Alvarez to see Risley during voir dire in order to assist Alvarez in the identification.  Risley states that when asked to identify the man who attacked him, Alvarez stated that Risley was wearing the same type of glasses when the attack occurred.  Risley asserts that he was not wearing glasses on that night.  Risley argues that Alvarez saw Risley during voir dire through the open courtroom window and saw Risley walk to the jury box wearing glasses.  Risley states that according to the police officer's testimony, Risley had no glasses on or in his backpack at the time of arrest.  Risley argues

21

that medical records show that after arrest, he was seen by a Harris County eye doctor, who ordered a pair of black-rimmed reading glasses.  Risley wore these at trial.

The Due Process Clause prohibits identification testimony at trial that derives from impermissibly suggestive procedures, which may lead to a mistaken identification.  *See Stovall v. Denno*, 388 U.S. 293, 302 (1967).  For example, a conviction based on an eyewitness identification at trial following a pretrial photographic identification may be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  An identification obtained by an unduly suggestive lineup may be excluded if, based on the totality of circumstances, there is a likelihood of a misidentification.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

A two-step analysis applies to challenges to identification evidence.  First, a court must determine whether the pretrial identification was impermissibly suggestive.  If so, a court must then determine whether, "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990) (citing *Simmons v. United States*, 390 U.S. 377 (1968)).  The bottom-line concern, however, is "reliability," which is "the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  Under Fifth Circuit precedent, "it is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997).

22

The totality of circumstances does not show that Risley was misidentified.  In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court applied a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  *See Livingston v. Johnson*, 107 F.3d 297, 310 (5th Cir. 1997) (listing the factors outlined in *Biggers*, 409 U.S. at 199-200).  A review of the five factors supports a conclusion that Alvarez's identification of Risley was reliable.

The first factor requires this court to consider Alvarez's opportunity to view Risley at the time of the crime.  Alvarez's testimony at trial shows that he had ample opportunity to view Risley at the time of the offense, which occurred at approximately 5:00 p.m. in October 2003.  Witnesses stated that it was not dark at that time.  Alvarez testified that he initially went to the parking lot because he heard his van alarm.  He saw Risley trying to open the van.  Alvarez asked Risley what he was doing.  Risley said that he was going to kill Alvarez.  Alvarez had full opportunity to observe Risley during this exchange.  Alvarez also testified that while he was running away from Risley, he looked back and saw Risley coming after him.

The second factor requires this court to consider Alvarez's degree of attention.  The record discloses no factor that would have distracted Alvarez's attention, and Risley does not propose any.

The third factor requires this court to consider the accuracy of Alvarez's prior description of the person identified. Alvarez described his attacker as a white male wearing a pullover and jeans with a backpack. Alvarez described his attacker as older and of average height and weight. The description Alvarez provided the police included the assailant's approximate age, height, weight, and clothing and matched Risley's age, appearance, and clothing that night.

The fourth factor requires this court to consider the level of certainty demonstrated by the witness at the confrontation. Alvarez immediately identified Risley as his assailant and was certain of his identification.

The fifth factor requires this court to consider the length of time between the crime and the confrontation. Approximately ten minutes passed between the alleged assault and Alvarez's seeing Risley in the shopping center area, one block from where the offense occurred.

All these factors support the reliability of Alvarez's identification. Considering these factors and Fifth Circuit precedent, even if the identification may have been suggestive, it did not raise a risk of misidentification.

Defense counsel cross-examined Alvarez in detail about his in-court identification. This gave the jury ample opportunity to evaluate Alvarez's credibility and decide whether the identity of Risley as the assailant was proved beyond a reasonable doubt. Defense counsel sought to impeach Alvarez's identification of Risley. (Reporter's Record, Vol. III, pp. 20-24, 33-37, 47-48, 52-53). Counsel questioned Alvarez at length about whether Risley

24

was wearing sunglasses or corrective glasses; the description he gave of Risley; the opportunity he had to view Risley through the courtroom window during voir dire; whether Risley had a beard or a mustache; whether Alvarez saw Risley after his arrest; whether Alvarez viewed Risley in the police car; whether Alvarez ran or drove to the gas station to call the police; whether Alvarez was nervous; and whether there was enough light at the time of the offense to let Alvarez get a good look at Risley. Counsel argued that Alvarez's in-court identification was tainted by his viewing of Risley at the defense table during voir dire. (*Id.* at 91-94, 96-97).

Risley has not shown that counsel was deficient for failing to object to Alvarez's in-court identification of Risley because the record does not show that any objection to Alvarez's in-court identification would have been sustained. Risley also fails to show that the outcome of trial would have been different had counsel made such an objection. Risley is not entitled to federal habeas corpus relief on this claim.

**4.     The Claim of Failure to Conduct a Pretrial Investigation**

Risley complains that his counsel failed to interview Alvarez, a witness called "Little Jerry," and the manager of the La Pupusa Loca restaurant. He also complains that defense counsel should have hired an investigator to locate these witnesses and obtain Risley's medical records. (Docket Entry No. 2, Petitioner's Memorandum, pp. 17-21).

To establish a failure-to-investigate claim, Risley must allege with specificity what a proper investigation would have revealed and how it would have benefitted him. *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green,* 882 F.2d

999, 1003 (5th Cir. 1989)).  Risley must also show a reasonable probability that, but for his

counsel's unprofessional errors, the result of the proceedings would have been different.

Risley asserts that defense counsel should have located the man who witnessed the

assault, Jerry Higgins, known as "Little Jerry."   (Docket Entry No. 2, Petitioner's

Memorandum, p. 18).  *Ex parte Risley,* Application No. 27,576-13 at 173.  Risley explains

that he had just finished doing his laundry at the laundromat when  "Little Jerry" approached

and asked if he could buy beer and share it with Risley.  (*Id*.).  According to Risley, Alvarez

came near Risley and "Little Jerry" and starting screaming.  Risley told "Little Jerry" that he

had something for him and began rummaging through his backpack.  "Little Jerry" told

Risley that Alvarez was driving away in his van.  Risley and "Little Jerry" then walked

toward the Stop-and-Go to buy a forty-ounce beer.  (*Id*.).

In his affidavit, defense counsel stated:

> At the crime scene I searched for a homeless man that Mr.
> Risley had described to me as Little Jerry.  I had been given the
> location where Little Jerry slept and lived.  I searched this area
> and spoke with people in the area in regards to a homeless
> person named Little Jerry. I  was unable to find him and without
> additional information was unable to do any other kind of
> searches, such as criminal history, address, phone number or
> voting record searches to determine his location.  No one I
> spoke with in the area had heard of a Little Jerry.  I did find a
> bicycle in the area of the La Pupusa restaurant.  I had been told
> that Little Jerry rode a bike in that area and thought it might be
> his.  I spoke with an employee of the restaurant to determine the
> owner and discovered an employee of the restaurant owned the
> bicycle.

26

*Ex parte Risley,* Application No. 27,576-13 at 149-50.  Risley has failed to demonstrate that counsel's efforts in investigating were deficient.  Risley does not provide any basis for concluding that a "trained investigator" would have been able to find "Little Jerry."  He has also failed to demonstrate that he was prejudiced by counsel's performance.

Risley also argues that counsel was deficient in failing to interview two eyewitnesses to the alleged assault.  One was Francisco Alvarez.  The other was a man described as a worker at the La Pupusa Loca restaurant.  Risley complains that his counsel restricted his pretrial investigation to discussions with Risley and examination of the prosecutor's file.

In his affidavit, Risley's counsel explained what he did to learn what Alvarez would say at trial:

> I telephoned the complaining witness in the case, Francisco Alvarez.  I received his information from the state's file. However, I was unable to reach him.  I also ran a criminal history check on him through the JIMS system and through Public Data.  Although I did not speak with him directly I felt comfortable because I had reviewed the state's file, which included the police report, which detailed his allegations.  The state's file also included notes from a conversation that Mr. Alvarez had with an assistant district attorney regarding the case and Mr. Alvarez's feeling on possible punishment.  I believed this information adequately prepared me to effectively cross-examine Mr. Alvarez.

*Ex parte Risley,* Application No. 27,576-13 at 150.

Risley has not shown that counsel was deficient in failing to interview Alvarez before trial or how interviewing Alvarez before trial would have altered the outcome of trial.

Defense counsel rigorously cross-examined Alvarez.  It is not clear what other questions defense counsel could have posed to further impeach Alvarez.

Risley may argue that if defense counsel had interviewed Alvarez, that would have revealed Alvarez's testimony that a restaurant manager had spoken to the police.  But Alvarez did not include this information in the statements he gave the police.  There is no basis to conclude that defense counsel was deficient in failing to make more exhaustive or aggressive efforts to interview Alvarez.  Nor does the record show a reasonable probability that had defense counsel interviewed Alvarez and learned about his recollection of the restaurant manager, the result of the proceeding would have been different.

Risley also faults defense counsel for not interviewing the restaurant manager.  Risley does not, however, identify the restaurant manager or provide information as to his location.  The only evidence as to any restaurant manager came from Alvarez at trial.  There was no mention of the restaurant manager in the police reports as a potential witness.  Risley does not allege that he gave his counsel information about the restaurant manager.

In his affidavit, defense counsel testified:

> Prior to trial I reviewed the state's file, interviewed my client regarding the facts of the case as he remembered them, attempted to interview the complaining witness and twice visited the alleged crime scene where I interviewed potential witnesses.
> . . .
>
> While at the restaurant I asked if anyone remembered the incident regarding the Aggravated Assault.  No one knew of the incident.

28

*Ex parte Risley,* Application No. 27,576-13 at 149-50. Defense counsel made a reasonable attempt to locate any potential witnesses by visiting the restaurant and asking questions. There is no basis to conclude that defense counsel was deficient in his investigation.

In a related claim, Risley complains that defense counsel should have hired an investigator to locate "missing" witnesses. Defense counsel made reasonable but unsuccessful efforts to contact Alvarez, "Little Jerry," and other potential witnesses. Risley does not explain why an investigator's efforts to locate witnesses would have yielded a different result. Risley does not explain what evidence an investigator would have uncovered or how this would have altered the outcome of trial.

Defense counsel was very familiar with the facts of the case and was able to conduct a vigorous cross-examination of Alvarez. Defense counsel asked about the time of the incident; whether Alvarez told the officer that Risley was wearing glasses; the description he gave; the trajectory of the knife; the presence of people in that busy intersection; whether the police took fingerprints from the van; whether Alvarez identified Risley when he was in the police car with handcuffs; how Alvarez reacts under pressure; the location of the area where the knife allegedly fell; and whether Alvarez told the officer that Risley had a beard or mustache.

Defense counsel also conducted a vigorous cross-examination of Officer Alcantara. Defense counsel used his detailed knowledge of the area where the incident occurred to impeach Officer Alcantara. Counsel asked how long it would take to run from the restaurant parking lot to the gas station where Alvarez used the telephone to call the police. Counsel

tried to show that there were possible locations that the knife could have been hidden and that Officer Alcantara failed to search these areas thoroughly.  Counsel was able to show the inconsistencies between Alvarez's testimony about the incident and the police officer's testimony about what occurred and Alvarez's statements at the time.  Risley does not explain how failing to file a motion to hire an investigator was deficient performance or how hiring an investigator would have altered the results of trial counsel's pretrial investigation.

Risley next argues that his medical records would have shown that he was physically unable to do what Alvarez claimed.  Risley filed a *pro se* motion for medical records in the state court.  He asserts that medical records from the Harris County Jail and Veteran's Hospital would show that two-thirds of one lung was damaged, he had hepatitis C, he had injured both knees while in the armed services, and he had arthritis in both knees.  Risley states that his knee problems made it impossible for him to walk well and unable to run without falling down.  He also has very little use of his left arm.  Risley also argues that Alvarez is in his twenties, is muscular, and weighs about 230 pounds.  Risley is fifty years old and weighs 120 pounds.

The offense took place on October 26, 2003.  Risley was arrested on that date.  Risley provides records from the Texas Department of Criminal Justice dated March 18, 1997, showing that Risley's right leg was approximately two inches shorter than his left leg due to an accident in which Risley's leg was crushed by a falling tree.  (Docket Entry No. 2-16, Petitioner's Memorandum, p. 13).  Risley also provides records from the Harris County Sheriff's Office from January to August 2004, and records from the Veteran's Hospital from

30

March 2004.  Risley also provides TDCJ records dated September 2005 to October 2006.

As to the records that postdate his arrest, the trial, and conviction, defense counsel could not

have obtained these records to use at trial.

At trial, the jury heard testimony that Risley stood by Alvarez's van, tried to open the

door of the van, retrieved a knife from his bag, threw the knife close to Alvarez's head, and

followed as Alvarez ran away.  Defense counsel's strategy was to argue that no assault took

place and that Alvarez was mistaken about his identification of Risley as the assailant.  The

jury could observe Risley and Alvarez and could make their own inferences about their

relative physical abilities.  Counsel could reasonably have concluded that presenting medical

documents at trial would not assist in the defense.

Risley argues that defense counsel should have secured the medical records from the

Harris County Sheriff's Office relating to his glasses prescription.  Risley states that he had

no glasses at the time of the offense, and that Alvarez was lying when he said Risley was

wearing glasses at the time of the offense.  Risley notes that there was no mention of glasses

in the offense report.  Risley was not wearing glasses in his booking photograph, which was

in evidence.  (Docket Entry No. 2, Petitioner's Memorandum, p. 14).[1]  Defense counsel

pursued the lack of support for Alvarez's testimony that Risley was wearing glasses at the

---

[1] The State offered a copy of Risley's booking photograph at trial.  (Reporter's Record, Vol.
III, p. 51; Reporter's Record, Vol. IV, State's Exhibit 2).  The copy provided to the court is
incomplete and does not show Risley's face.  The court is in the process of trying to obtain an
accurate copy of State's Exhibit 2.

time of the offense.  Defense counsel rigorously questioned Alvarez about the type of glasses and whether he mentioned them to Officer Alcantara when describing his assailant.  Counsel also questioned Officer Alcantara about whether Risley was wearing glasses, and Officer Alcantara said he was not.  (Reporter's Record, Vol. III, p. 77).  The jury had ample evidence to support Risley's claim that he was not wearing glasses at the time of the offense.  Risley fails to show how failing to obtain the records from the Harris County Jail was deficient or prejudicial.

Risley also faults defense counsel for not investigating his mental condition.  Risley does not appear to claim that he had a history of mental illness or that he was mentally ill at the time of the incident.  Counsel questioned Alvarez and Officer Alcantara about Risley's demeanor.  Both testified that Risley's verbal and physical resistance suggested intoxication.  Risley has not shown either deficient performance or prejudice from counsel's failure to obtain the records.

Risley is not entitled to federal habeas corpus relief on this claim.

### 5.    The Claim of Failure to File Pretrial Motions

Risley claims that defense counsel was ineffective for filing only one motion, for the court to assess punishment.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 15-17, 21).  Risley claims that his counsel should have filed a motion to allow him to proceed *pro se*, a motion for discovery, a motion to obtain medical records, a motion in limine about prior offenses so that Risley could testify, and a motion for speedy trial. (*Id*. at 16-17).  Each claim is reviewed.

### a.      The Failure to File Motion to Proceed *Pro Se*

Risley claims that he filed a *pro se* motion to proceed *pro se*, but the trial court refused to act on it.  He alleges that defense counsel's failure to file the motion denied him his right to represent himself.  (*Id.*).

In *Faretta v. California,* the Supreme Court held that a defendant has a Sixth Amendment right to represent himself if he knowingly and intelligently chooses to forego the assistance of counsel.  422 U.S. 806, 819, 836 (1975).  Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right to self-representation is not effective until asserted.  *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir. 1982).  To exercise the right, a defendant must "'knowingly and intelligently' forego counsel, and the request to proceed *pro se* must be 'clear and unequivocal.'" *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986) (citation omitted).  At a *Faretta* hearing, the trial court, before granting the request, "must caution the defendant about the dangers of such a course of action so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Id.* (quoting *Faretta*, 422 U.S. at 835, 95 S. Ct. 2525).  A defendant may waive the right through subsequent conduct indicating an abandonment of the request. *See McKaskle*, 465 U.S. at 182, 104 S. Ct. 944 (1984); *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) (en banc).

Assertion of the right to self-representation requires two steps.  First, the defendant must unequivocally inform the court of the desire to represent himself.  This circuit strictly construes the "clear and unequivocal" requirement. *Id. Burton v. Collins,* 937 F.2d 131, 133

(5th Cir. 1991).  Second, the court must hold a *Faretta* hearing to determine whether the defendant is "knowingly and intelligently" foregoing his right to appointed counsel and whether, by postinvocation action, he has waived the request.

The record shows that Risley filed a pleading entitled, "Motion to proceed *in forma pauperis - pro se*." (Clerk's Record, Vol. I, p. 11).  In that motion, Risley sought permission to "file any and all writs, and motions alongside his court appointed attorney for the following reason's: It is the defendant's right to a proper and fair preparation for trial. Defendants attorney has already violated the attorney-Client Confidentiality Rule." (*Id*.).  The remainder of the motion addressed his inability to pay and his request to proceed as a pauper.  (*Id*. at 12).

This motion did not clearly and unequivocally invoke the right to self-representation. At most, Risley sought hybrid representation, to represent himself by filing "writs" and motions "alongside his court-appointed attorney."  While an accused in a criminal matter may conduct his case *pro se* or by counsel, he has no right to such hybrid representation.  *See Neal v. State*, 870 F.2d 312, 315-16 (5th Cir. 1989); *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981).  "In absence of a clear indication by the defendant of his desire to waive his fundamental constitutional right to counsel, we are unwilling to infer from an ambiguous record that such a waiver existed." *Burton v. Collins*, 937 F.2d at 133 (citations omitted).  Risley's statements, delivered contemporaneously with the purported request to represent himself, are reasonably interpreted as an expression of his dissatisfaction with his detention and the judicial process.  The reasonableness of this interpretation is bolstered by

34

the lack of any additional affirmative request on the part of Risley to present his case directly to the jury.  After the state court assessed punishment, Risley expressed his desire to proceed *pro se* on appeal.  Once the court advised him about the pitfalls of self representation, he stated that he wanted a court-appointed attorney to represent him on appeal.  (Reporter's Record, Vol. V, pp. 21, 26).  Risley has not established that he clearly and unequivocally asserted his right to self-representation.  *See id.*

Risley argues that the state court did not consider his *pro se* motion to proceed *pro se* and that counsel should have filed the motion.  Risley essentially claims that counsel should have filed a motion for hybrid representation.  Such a motion would have been futile. Defense counsel was not deficient, and caused no prejudice, in failing to file a meritless motion.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).

### b.    Failure to File Motion for Discovery

Risley argues that defense counsel falsely claimed in his affidavit to the state habeas court that he filed a motion for discovery.  (Docket Entry No. 2, Petitioner's Memorandum, p. 16).  He states that he himself filed a *pro se* motion for discovery.  *(Id*.).

The record shows that Risley did file a *pro se* motion for discovery.  (Clerk's Record, Vol. I, p. 28).  In that motion, Risley sought to discover any exculpatory evidence, prior inconsistent statements, and evidence seized from him.  (*Id*. at 28-40).

In his affidavit, defense counsel stated:

35

> The second issue I have been asked to address is in regards to
> trial motions. I along with the Assistant District Attorney
> presented Judge Mary Lou Keel with a Discovery Order, which
> she signed March 4, 2004. The state was ordered to furnish and
> allow for inspection by the defense all evidence that was to be
> used against Mr. Risley as well as all exculpatory evidence and
> prior or extraneous evidence of Mr. Risley. The state complied
> with the order in addition to leaving their file open for me to
> discover.

*Ex parte Risley,* Application No. 27,576-13 at 150. The record supports counsel's statement.

(Clerk's Record, pp. 57-59).

Risley does not explain how a separate motion for discovery would have altered the

outcome at trial. Any such motion would have been duplicative of the agreed motion filed

by counsel and the prosecutor. Risley is not entitled to federal habeas corpus relief on this

claim.

### c.      Failure to File a Motion to Obtain Medical Records

Risley contends that defense counsel was ineffective for failing to file a motion to

obtain Risley's medical records. (Docket Entry No. 2, Petitioner's Memorandum, pp. 19-21).

Risley asserts that records from the medical department of the Harris County Jail would have

shown that he had an inguinal hernia in 2004, a left rotary cup injury in 2004, and a

replacement of a hinged right knee brace in 2004; V.A. medical records would have shown

damage to the right knee in 2003; prison medical records would have shown that he had a

hernia in 2004, his right leg was ½ inch shorter than his left leg, he had Hepatitis C, he had

active tuberculosis that damaged over half his right lung, he had a hinged right knee brace,

he cannot walk far without his left knee brace, and he cannot breathe without inhalers and

Albuterol.  The records would also show that a Harris County eye doctor issued one pair of black rimmed reading glasses in 2004.

As discussed above, counsel did not render ineffective assistance by failing to present medical records.  Risley is not entitled to federal habeas corpus relief on this claim.

### d.    Failure to File a Motion for Speedy Trial

Risley contends that defense counsel was ineffective for failing to file a motion for a speedy trial.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 21-22).  He apparently argues that the delay prevented him from locating a possible witness, Jerry Higgins or "Little Jerry." Risley argues that the pretrial delay violated his rights under the speedy trial clause of the Sixth Amendment to the United States Constitution.  The speedy trial clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI.

"It will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002).  Under the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972), a court must balance four factors in determining whether the defendant received a speedy trial within the meaning of the Sixth Amendment.  *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000).  These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant.  *Barker*, 407 U.S. at 530, 92 S. Ct. 2182.  As a threshold matter, the defendant must show that the length of the delay

is presumptively prejudicial.  *Id*.; *Knox*, 224 F.3d at 477.  "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker*, 407 U.S. at 530, 92 S. Ct. 2182.

The Fifth Circuit has previously held that a delay of ten and one-half months is not presumptively prejudicial.  *See United States v. Maizumi*, 526 F.2d 848, 851 (5th Cir. 1976). While neither *Barker* nor the Constitution itself defines when a delay becomes presumptively unreasonable, the Fifth Circuit has held that "[a] delay of less than one year will rarely qualify as 'presumptively prejudicial' for purposes of triggering the *Barker* inquiry."  *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994).  "Absent extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, a delay of less than one year is not sufficient to trigger an examination of the *Barker* factors."  *Id*. at 647 (internal citations omitted).  *Knox*, 224 F.3d at 477.

Risley was arrested on October 26, 2003.  His trial began on June 28, 2004.  (Clerk's Record, Vol. I, p. 151).  Risley filed a *pro se* motion for speedy trial on February 12, 2004. (Clerk's Record, Vol. I, p. 43).  Risley signed an agreed resetting on February 18, 2004, to March 4.  (*Id*. at 56).  Risley signed another agreed resetting on March 4, 2004.  On that document, he wrote, "denial of fast speedy trial." (*Id*. at 60).  The trial was postponed on two more occasions because Alvarez had a personal problem and could not come to court.  His house was struck by lightning and he had to take care of his family.  (Reporter's Record, Vol. III, pp. 39-41).  On June 21 and June 24, 2004, Risley signed the agreed resettings.  He wrote, "under duress," on the June 24 resetting.  (*Id.* at 94).

In his affidavit, defense counsel stated: "I did not file motion for speedy trial because it was not necessary.  The state indicted Mr. Risley in a timely fashion per the rules of the Code of Criminal Procedure. Further Mr. Risley's trial was not delayed."  *Ex parte Risley,* Application No. 27,576-13 at 150.

Risley claims that the delay prevented him from locating Jerry Higgins.  As discussed above, counsel made reasonable efforts to locate Jerry Higgins.  There is no basis to conclude that the delays in the trial settings affected the ability to find "Little Jerry."  Counsel determined that there were no grounds for filing a motion for speedy trial.  There is no basis to find this decision either deficient or prejudicial.

Risley is not entitled to federal habeas corpus relief on this claim.

### e.    Failure to File a Motion in Limine Regarding Prior Convictions

Risley contends that defense counsel's failure to file a motion in limine regarding his prior convictions denied him the right to testify because counsel told him that the State would then be able to use his prior felonies against him.  (*Id.* at 17).  Risley alleges that he intended to testify but did not because counsel told him that the State would use his six prior felonies on cross-examination.  Risley contends that the prior felonies were over ten years old.  (*Id.*).

Risley mentions in his *pro se* motion for limine his anticipation that the State would offer his prior convictions during trial before or during his testimony.  His motion was filed on February 12, 2004 and is not conclusive as to his desire to testify at trial.  (Clerk's Record, Vol. I, pp. 50-53).  Had counsel filed a motion in limine, that would not have made Risley's

39

prior convictions inadmissible had he testified.  Rather, the State would have requested the trial court to hold a hearing on admissibility.

In his affidavit, defense counsel testified:

> I did not file a motion in limine because I did not think it was necessary.  This case involved the complaining witness and the testimony of the reporting police officers.  Mr. Risley did not testify during the guilt/innocence phase of trial.  The state was not attempting to nor was able to present evidence regarding prior convictions or extraneous offenses of Mr. Risley.  The evidence in this case was minimal.  From a strategy standpoint, there was not any evidence that I sought to exclude, because there was minimal evidence being presented.  There was no legal reason to file a motion [in] limine, nor was any evidence presented that I did not anticipate.

*Ex parte Risley,* Application No. 27,576-13 at 150-151.

Counsel made a reasoned decision not to file a motion in limine.  He knew that the State would call two witnesses and he knew that Risley was not going to testify during the guilt-innocence phase of trial.  Counsel reasonably concluded that as long as Risley was not going to testify, the State would not be able to impeach him with prior convictions.

The record shows that during the punishment phase, Risley elected to take the stand, against counsel's advice.  (Reporter's Record, Vol. V, p. 13).  On cross-examination, the prosecutor questioned Risley about his six prior felony convictions and recent misdemeanor convictions.  Risley admitted that he had a total of ten convictions.  (*Id*. at 16).  Counsel had considered the prior convictions and advised Risley against taking the stand.

Risley does not explain how, if counsel had filed a motion in limine, that would have altered the outcome of trial.  Such a motion would have required the prosecutor to request

a ruling on the admissibility of the prior convictions outside the presence of the jury.  If Risley had testified, the evidence of the prior convictions would have been admitted.

If Risley had taken the stand during the guilt/innocence phase, he presumably would have given testimony similar to the testimony he gave during the punishment phase.  He testified that on October 26, 2003, a man came up to him and threatened him.  Risley stated that he was homeless at the time and had just finished doing his laundry.  Risley stated that Alvarez threatened him because he was near Alvarez's vehicle.  Risley denied that he ever claimed to have been in Vietnam.  He denied that he pulled a knife.  (Reporter's Record, Vol. V, p. 14).  Risley testified that he made Alvarez think something, and he regretted having done that.  (*Id.* at 15).  Risley stated that he was in fear himself.  Risley was cross-examined on his prior convictions.

Risley has not shown that counsel rendered ineffective assistance by failing to file a motion in limine.  Nor has Risley shown prejudice.  Risley is not entitled to federal habeas corpus relief on this claim.

### 6.    Failure to Make a Proper Closing Argument

Risley asserts that in closing argument, defense counsel vouched for the credibility of Alvarez in stating, "I believe that he was telling the truth," and, "I don't think he was lying."  (Docket Entry No. 2, Petitioner's Memorandum, pp. 9-10).  Risley contends this argument prevented the jury from concluding that Alvarez was not credible.  (*Id.*).  Risley argues that counsel's decision not to focus on Alvarez's "lies" prevented the jury from making an accurate determination as to the truth.  (*Id.* at 10).

41

During closing, defense counsel stated:

> I believe that he was telling the truth from what he believed.
> That doesn't mean that what he believes is factual.  He seems
> like a good man.  I doubt that he came up here to lie just for the
> heck of it.  I don't think that he was lying, but I think you have
> to take consideration [sic] what was going on out there.

(Reporter's Record, Vol. III, p. 90).  Counsel argued that Alvarez's in-court identification

was the product of his viewing Risley at the defense table during voir dire.  Counsel stated

that Alvarez made inconsistent statements about whether Risley had a beard or mustache and

whether Risley was wearing glasses at the time of the incident and that the man he described

as his assailant was not Risley.  Counsel argued that these inconsistencies were the product

of Alvarez being nervous and excited.  Counsel further asserted that Alvarez's identification

of Risley as his assailant was the result of having viewed Risley in the patrol car wearing

handcuffs. (*Id*. at 93).  Counsel argued that if a knife had been used as Alvarez testified, the

officers should have been able to recover it because the area was covered in asphalt as

opposed to long grass.   (*Id*. at 95).  Counsel emphasized the discrepancy between the

description of Risley in the police report and that provided by Alvarez at trial.  Counsel made

the point that Alvarez saw Risley wearing glasses at trial and falsely testified that Risley was

wearing glasses at the time of the incident.  (*Id*. at 96-97).

In examining counsel's closing argument against an ineffective-assistance allegation,

a court considers the closing argument in its entirety.  *Carter v. Johnson*, 131 F.3d 452, 446

(5th Cir. 1997) (citing *Teague v. Scott*, 60 F.3d 1167, 1173 (5th Cir. 1995)).  To establish

credibility with the jury, counsel may make a tactical decision to "acknowledge the

defendant's culpability and may even concede that the jury would be justified in imposing the death penalty." *Id.*; *see United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999); *Kitchens v. Johnson*, 190 F.3d 698 (5th Cir. 1999).

In this case, defense counsel in no way conceded Risley's guilt. Nor did counsel concede that Alvarez was providing true or accurate testimony. Rather, defense counsel argued that Alvarez was relaying what he mistakenly, if genuinely, believed. Defense counsel made the strategic decision to challenge Alvarez as mistaken rather than as a deliberate liar. Counsel emphasized that Alvarez may have testified truthfully about what he thought he saw, but that Alvarez was mistaken. Counsel's strategy was reasonable in light of the evidence at trial.

During the punishment phase of trial, Risley complained about defense counsel's statements in closing argument. Risley told the judge that defense counsel had "slit Risley's throat." The trial judge said, "counsel's argument did not cut your throat[,]" and, "I thought Mr. Madrid did a very good job." (Reporter's Record, Vol. V, pp. 22-23).

Risley is not entitled to federal habeas corpus relief on this claim.

### 7.    The Claim of Failure to File a Motion for New Trial

Risley contends that he was denied counsel during the time for filing a motion for new trial and was unable to preserve errors for direct appeal. (Docket Entry No. 2, Petitioner's Memorandum, pp. 15-16). Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Green v.*

*Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1999).  The Fifth Circuit has declined to extend the

"critical stage" designation to motions for new trial.  *See Mayo v. Cockrell*, 287 F.3d 336,

339 (5th Cir. 2002).  There is no clearly established federal law on the issue.

The Texas Court of Criminal Appeals recently held that a defendant is entitled to

counsel during the period for filing a motion for new trial.  *Cooks v. State*, 240 S.W.3d 906,

911 (Tex. Crim. App. 2007); *Funk v. State*, 188 S.W.3d 229, 231 (Tex. App. - Fort Worth

2006, no pet.).  Application of this right newly recognized by the State would be barred by

*Teague v. Lane*, 489 U.S. 288 (1989), which  held that new constitutional rules of criminal

procedure do not apply to cases that have become final before the new rules were announced.

The record shows that Risley's trial counsel filed a motion to withdraw.  Risley

requested the appointment of counsel for appeal on June 29, 2004, the date sentence was

imposed.  (Clerk's Record, Vol. I, p. 112).  The trial court granted counsel's motion to

withdraw and appointed Risley appellate counsel on the same day.  (*Id*. at 113).  Appellate

counsel filed a motion to designate the matters to be included in the record on July 8, 2004.

(*Id*. at 115-17).  Risley was represented by appellate counsel within the thirty-day time limit

for filing a motion for new trial.  Appellate counsel did not file a motion for new trial. In his

state habeas application, Risley claimed that he filed a *pro se* motion for new trial based on

ineffectiveness of counsel.  *Ex parte Risley*, at 48-49, 63-64.  Risley claimed that the court

refused to hold a hearing.  *Id*.  Though Risley lists this claim under the heading that trial

counsel was ineffective, the record shows that trial counsel had withdrawn and appellate

counsel had been appointed.  Risley cannot demonstrate that trial counsel was deficient for

44

failing to file a motion for new trial.  Even if this court construed the federal petition to raise the claim that he was denied a constitutional right to effective assistance of appellate counsel when he failed to file the motion, Risley cannot show that counsel was deficient or that he was prejudiced.

Risley is not entitled to federal habeas corpus relief on this claim.

### 8.      The Claim of Failure to Make a *Batson* Challenge

Risley alleges that the prosecutor used his peremptory strikes to remove venire members Haws, Price, and Rutherford because they were black.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 24-25).  Risley states that during voir dire, Haws did say "this sounds like a witch hunt."  (Reporter's Record, Vol. II, p.  36).  Risley asserts that the prosecutor struck Price although he only nodded his head and made no verbal statement in voir dire.  (Docket Entry No. 2, Petitioner's Memorandum, p. 24).  Risley contends that Rutherford was struck although he only said "no problem" when the prosecutor asked if he could convict with only one witness.  (*Id*. at 24).  Risley argues that neither Caster nor Dibello, white venire members, were struck although they merely nodded their heads in voir dire.  (*Id*. at 25).  He argues that Graham, another white venire member who stated that he needed more than one witness for a conviction, was not stricken.  (*Id*. at 24).  Risley claims that Turboff, who was also white, was not stricken, although he said he would be a little suspicious as to why there was no weapon in evidence.  (*Id*. at 25).  Risley argues that the prosecutor's actions during voir dire supported an inference that discrimination may have occurred and was sufficient to establish a 'prima facie' case under *Batson*.

45

"The use of peremptory challenges to strike venire-persons based on their race violates the equal protection component of the Due Process clause of the Fifth Amendment." *United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000).  *Batson v. Kentucky,* 476 U.S. 79 (1986), establishes a three-pronged inquiry to determine whether a peremptory challenge was based on race: First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.  *Snyder v. Louisiana*, --- U.S. ----, 128 S. Ct. 1203 (2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277 (2005) (Thomas, J., dissenting)) (internal quotations omitted).  The party challenging a strike bears the burden of persuasion to show that it was purposefully discriminatory.  A *prima facie* showing that the strike was racially motivated is the first step.  *United States v. Davis*, 393 F.3d 540, 544 (5th Cir. 2004).  If the *prima facie* showing is made, the burden shifts to the party making the strike to articulate a race-neutral justification.  *Id*.  The trial court must determine whether the party making the challenge has carried its burden of proving purposeful discrimination.  *Id*.  Under the Equal Protection Clause, a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded jurors share the same race.  *Powers v. Ohio*. 499 U.S. 400 (1991).

On state habeas review, counsel provided an affidavit stating that:

> The third issue I have been asked to address is whether I believed it was necessary or beneficial to object to state's alleged use of peremptory challenges to exclude members of the venire based on race. I did not make this objection because in my opinion the state did not exclude members of the venire based on race. I was satisfied with the strikes that I used. Based on my observation of the venire's answers and the state's strikes, I do not believe that the state struck anyone based on race.

*Ex parte Risley*, Application No. 27,576-13 at 151.

Risley faults counsel for not making a *Batson* challenge to the prosecutor's use of peremptory strikes against Haws, Price, and Rutherford. The record shows that prosecutor and defense agreed to strike Haws, Price, and Rutherford. (Clerk's Record, Vol. I, pp. 97, 99). Caster and Dibello were not struck. (*Id.* at 98). Graham stated that even if he believed a witness beyond a reasonable doubt, he would still need more evidence. (*Id.* at 56). Both Graham and Turboff were struck by the prosecutor, contrary to Risley's allegation. (Docket Entry No. 2, Petitioner's Memorandum, p. 25). The record shows that the defense struck Dibello. (Clerk's Record, p. 101). The record does not reveal whether Haws, Price, and Rutherford were black or whether Caster and Dibello were white. *See Ross v. Estelle*, 694 F.2d at 1012.

Risley also claims that venire member Price made no verbal statements during *voir dire*. The record does not support this claim. During defense *voir dire*, Price explained that he would need more than someone's testimony that there was a knife. (Reporter's Record,

Vol. II, p. 54).  Price also stated that he would have a problem with sitting in judgment on another person.  (*Id*.).

Rutherford, in addition to stating "no problem," raised some concerns for the prosecutor when he laughed out loud during the discussion of proof beyond a reasonable doubt and again later.  (Reporter's Record, Vol. II, pp. 28, 31).  The prosecutor asked why venire member Rutherford was laughing, but received no response.  The prosecutor expressed this concern on the record.  (Reporter's Record, Vol. II, p. 31).  Rutherford also said that he would require the defendant to testify on his own behalf.  (*Id*. at 81-82).  While it is true that both Caster and Dibello answered, "no problem," they did not raise similar concerns with the prosecution, and reiterated that they would not need more than one person's testimony if they found that person credible.  (Reporter's Record, Vol. II, p. 68).

Risley did not request a *Batson* hearing to object to any of the State's peremptory challenges.  Nothing in the record supports Risley's allegation that particular jurors were improperly struck.   The record provides no basis for an inference of purposeful discrimination.  Risley's conclusory allegation is not supported by the record.

Risley is not entitled to federal habeas corpus relief on this claim.

**9.      The Claim of Failure to Object to the Use of Prior Convictions**

Risley complains that defense counsel rendered ineffective assistance by failing to object to the State's evidence offered to prove the alleged prior convictions.  Risley argues that under *Apprendi*, the prior convictions should have been found by a jury, not the judge,

because they increased the maximum term to which he could be sentenced.  Risley argues

that the evidence was insufficient to prove the prior convictions beyond a reasonable doubt;

the second prior conviction was not signed by the County Criminal Clerk as closed; and  one

of the prior convictions had already been used as an enhancement.  (Docket Entry No. 2,

Petitioner's Memorandum, pp. 26-28).

> The indictment alleged:
>
>> Before the commission of the offense alleged above, . . . , on
>> June 27, 1977, in Cause No.C74-11690-HK, in the 4th District
>> Court of Dallas County, Texas, the Defendant was convicted of
>> the felony of aggravated robbery.
>>
>> Before the commission of the primary offense, and after the
>> conviction in Cause No. C74-11690-HK was final, the
>> Defendant committed the felony of possession of a weapon by
>> felon and was finally convicted of that offense on September 21,
>> 1984, in Cause No. 205777D, in the 213th District Court of
>> Tarrant County, Texas.
>>
>> Against the peace and dignity of the State.

*Ex parte Risley,* Application No. 27,576-13 at 210.

Risley argues that the state court improperly considered his prior convictions to

increase his sentence.  Risley explains that the maximum sentence for aggravated assault is

twenty years; the trial judge determined that Risley had at least six felony convictions and

several arrests and was on parole for a ninety-nine year sentence; and that the twenty-year

sentence was increased to a thirty-year sentence based on these prior convictions.  (Docket

Entry No. 2, Petitioner's Memorandum, pp. 26-27).  Risley asserts that the use of prior

convictions violates the United States Supreme Court's decisions in *United States v. Booker,*

543 U.S. 220 (2005) and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).  (Docket Entry No.

2, Petitioner's Memorandum, pp. 27-28).

This challenge is without merit.  In *United States v. Booker,* the Supreme Court

extended its prior decisions in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Blakely v.*

*Washington,* 542 U.S. 296 (2004), to the federal Sentencing Guidelines, holding:

> Accordingly, we reaffirm our holding in *Apprendi:* Any fact
> (other than a prior conviction) which is necessary to support a
> sentence exceeding the maximum authorized by the facts
> established by a plea of guilty or a jury verdict must be admitted
> by the defendant or proved to a jury beyond a reasonable doubt.

*Booker,* 543 U.S. at 244.  A different majority of the Court then excised certain statutory

provisions that had made the Guidelines mandatory, making the Guidelines advisory.  *Id.* at

245.  The Court excluded prior convictions from the facts that had to be admitted by the

defendant or proved to a jury beyond a reasonable doubt.  *See Booker*, 543 U.S. at 244.  The

state court's use of Risley's prior convictions to enhance his sentence did not violate *Booker*.

Risley asserts that defense counsel should have objected to the use of one of the two

prior convictions alleged in the indictment on the ground that there was no clerk's notation

showing that Cause Number C-74-11690-HK, the case alleged in the first enhancement

paragraph, was closed.  During the punishment phase, the following exchange took place

after the reading of the indictment:

> The court:     How does the defendant plead?
>
> The defendant:  Not true.  Your Honor, can I say something
> about that?

> The court:      Sure.
>
> The defendant:   All right. On that one that . . . something different. It's not signed off by the County Criminal Clerk and as far as the way I understand it in other cases that I've read in the law books, it's got to be signed off because it's closed.
>
> The court:      I don't share your understanding of the law.

(Reporter's Record, Vol. V, pp. 6, 11).  Risley stated his objection to the use of the prior conviction.  The court rejected Risley's objection.  Risley fails to show that the outcome of the punishment phase would have been different had counsel lodged the objection.  To the extent Risley is claiming that counsel should have asserted some other objection to these prior convictions, Risley does not identify what that objection might have been.

Risley complains that the documents in the pen packet relating to the conviction in Cause Number C-74-11690-HK did not contain a notation that the case was closed.  He states that the conviction in F-76-8885-HK did contain a certificate.  (Docket Entry No. 2, Petitioner's Memorandum, p. 26).  He argues that only the second conviction could properly be used for enhancement purposes.  (*Id*.).  The record shows that in C-74-11690-HK, Risley pleaded guilty to aggravated robbery on June 20, 1975 and was placed on probation for ten years.  (Reporter's Record, Vol. VI, State's Exhibit 5, pp. 5-6).  On June 27, 1977, the court revoked Risley's probation.  On July 1, 1977, the court imposed a ten-year sentence.  These documents establish that the conviction in Cause Number C-74-11690-HK was final well before September 21, 1984, the date the conviction in Cause Number 205777D became final.

Risley does not explain why the absence of the clerk's notation in Cause Number C-74-11690-HK would have prevented the case from being closed.

The prior conviction, Cause Number 205777D, alleged in the second enhancement paragraph, was proved at trial.  (Reporter's Record, Vol. VI, State's Exhibit 4).  The pen packet contained an affidavit stating that the judgment was a true and correct copy of the original on file with the Texas Department of Criminal Justice.  (*Id*. at 1).  The pen packet also contained a judgment for Cause Number 205777D for possession of a weapon by a felon on September 21, 1984.  (*Id*. at 5-6).  Risley admitted that he was the defendant in the convictions presented to the court.  (Reporter's Record, Vol. V, p. 11).

Risley asserts that his prior conviction in Cause Number 205777D could not be used to enhance his sentence in Cause Number 966167 because it had already been used to enhance his conviction in Cause Number 0364194D.  The record shows that the State did not use Cause Number 0364194D for enhancement purposes, but did present evidence of that conviction to the court.  (Reporter's Record, Vol. VI, State's Exhibit 6, pp. 1, 5).  In *Bennett v. Little*, 71 F.3d 879 (5th Cir. 1995), the Fifth Circuit considered a defendant's argument that rights were violated when he was sentenced as a habitual offender.  The defendant asserted that "it has never been held as permissible to use a conviction, enhanced by two prior convictions resulting in the imposition of a life sentence . . . to in a second proceeding, relitigate the facts, and the law and the evidence supporting the charge to again establish the habitual criminal status" and impose additional punishment.  The Fifth Circuit cited *Sudds v. Maggio,* 696 F.2d 415, 417 (5th Cir. 1983), in which the court held that a state does not

offend double jeopardy if it sentences a defendant as a habitual offender more than once. The state may "use the same prior conviction to enhance sentences on more than one subsequent conviction." *Bennett v. Little*, 71 F.3d 879, 1995 WL 727392, *3 (5th Cir. 1995).

Before 1979, Texas law prohibited the prosecution from using a prior conviction more than once to enhance punishment. *See Ex Parte Bonham*, 707 S.W.2d 107, 108 (Tex. Crim. App. 1986). This limitation was removed in 1979 by statute. TEX. PEN. CODE § 12.46 (Vernon Supp. 1992). Risley's prior conviction occurred after this statutory revision.

Risley has failed to show that defense counsel was deficient for not objecting to the repeated use of a prior conviction for enhancement purposes. Nor has Risley established that there were any valid objections counsel should have made to the use of the prior convictions. Risley fails to show that the outcome of the punishment phase of trial would have been different had counsel made the requested objections.

Risley is not entitled to federal habeas corpus relief on this claim.

## VI.    The Claim of Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). A court reviews counsel's appellate performance under the *Strickland v. Washington* standard. *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Risley must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the deficient performance caused prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A showing of prejudice requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

Risley complains that appellate counsel rendered ineffective assistance by not raising on appeal issues regarding hearsay, pretrial identification, and the State's failure to prove (and the inadmissibility of) his prior convictions. (Docket Entry No. 2, Petitioner's Memorandum, pp. 29-32). In his brief, appellate counsel raised three issues, two concerning the factual sufficiency of the evidence and one concerning trial court error. (Appellant's Brief, p. iii). Risley's challenges to the admission of hearsay, suggestive pretrial identification, and the sufficiency of evidence to prove the prior convictions alleged for enhancement purposes are, for the reasons discussed above, not grounds for finding appellate counsel deficient in failing to raise them on appeal. The failure to raise these grounds did not cause Risley prejudice. *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001) (finding that where each of the grounds underlying the alleged errors by counsel on appeal lack merit, appellate counsel's failure to pursue relief on those grounds does not constitute ineffective

54

assistance of counsel because no prejudice resulted and because the reliability of the result of the appeal was not undermined).

Risley next asserts that appellate counsel misled the court with untrue statements. (Docket Entry No. 2, Petitioner's Memorandum, pp. 29-32).  Risley argues that counsel's statement that "the officer's testimony was in line with the complainant's" was false and misleading in light of counsel's earlier statement in the recitation of the facts that the officer did not recall talking to any other witnesses or people who witnessed the incident.  (Docket Entry No. 2, Petitioner's Memorandum, p. 29) (citing Appellant's Brief, p. 3, 16).  Appellate counsel noted in his brief that Officer Alcantara stated that he got the call at 4:57 and arrived at 5:01.  Appellate counsel stated that Officer Alcantara's testimony was in line with the timeline provided by Alvarez, who stated that the officer arrived approximately five minutes after Alvarez called the police.  (Appellant's Brief, p. 16).  This statement was supported by the evidence at trial.

Risley complains that counsel's summary of his testimony was intentionally worded so that the conviction would be affirmed.  (Docket Entry No. 2, Petitioner's Memorandum, p. 30).  This allegation is conclusory, unsupported, and provides no basis for federal habeas relief. *See Ross v. Estelle*, 694 F.2d at 1012.  Risley complains that counsel suggested that he went over to Alvarez's van rather than Risley's account that Alvarez approached him on the sidewalk in front of the laundromat.  In his brief, counsel quoted part of Risley's testimony stating that Alvarez "came up threatening me, thinking I was around his vehicle." (Appellant's Brief, p. 6).  Counsel's account of events does not imply an intent on Risley's

55

part to approach Alvarez's van.  Risley cannot demonstrate any deficiency or prejudice from this statement in the brief.

Risley refers to appellate counsel's statement that "[t]he complainant was the one witness who identified appellant at trial – the manger [sic] was not called."  (Appellant's Brief, pp. 15-16).  Risley argues that the statement could have been read to mean that the officer had taken a statement from a restaurant manager.  The record at trial and the statement of the facts in the brief negate any such reading.  The record shows that no restaurant manager was called as a witness at trial.  Stating this fact does not imply that the manager was in attendance at trial.  Alvarez's testimony at trial indicated that the restaurant manager spoke to the police; the officer testified otherwise.  (Reporter's Record, Vol. III, p. 17).

Risley complains that appellate counsel made false or misleading statements about the evidence supporting the prior convictions.  (Docket Entry No. 2, Petitioner's Memorandum, pp. 31-32).  Risley admitted to having a total of ten convictions, including six felonies, and being on parole for a ninety-nine year sentence.  (Reporter's Record, Vol. V, pp. 16-17).  As noted, the State's Exhibit 4 contained a judgment from Tarrant County in Cause Number 205777D for possession of a weapon by a felon.  (Appellant's Brief, pp. 3-6).  State's Exhibit 5 contained a judgment from Dallas County in Cause Number C74-11690-HK for aggravated robbery.  (Appellant's Brief, pp. 3-6).  Risley has not shown that appellate counsel provided false or misleading information to the appellate court.  Nor has Risley shown that but for counsel's alleged briefing deficiencies, the outcome would have been changed.  There is no showing of a reasonable probability that, even assuming appellate counsel made

56

unprofessional errors, the result of the proceeding would have been different but for such errors.  *Duhamel v. Collins,* 955 F.2d 962, 965 (5th Cir. 1992).

The state habeas court found:

> 1.  The applicant fails to show that . . . appellate counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.
>
> 2.  The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Risley,* Application No. 27,576-13 at 158-59.  The Court of Criminal Appeals explicitly based its denial of habeas relief on this finding.  These credibility determinations are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  Risley has not produced clear and convincing evidence to rebut these findings.  The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law.  Risley is not entitled to federal habeas corpus relief on this claim.

## VII.   The Claims Based on Errors in the State Habeas Proceedings

Risley complains that on habeas review, the state habeas court denied his request for an evidentiary hearing.  He explains that a hearing was necessary to resolve discrepancies between counsel's affidavit and the trial record.

The infirmities in state habeas proceedings on habeas review that Risley alleges do not constitute grounds for habeas relief in federal court.  *Trevino v. Johnson,* 168 F.3d 173,

180 (5th Cir. 1999); *Hallmark v. Johnson,* 118 F.3d 1073, 1080 (5th Cir.), *cert. denied,* 118

S. Ct. 576 (1997); *see Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on

a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his

conviction, as it is an attack on a proceeding collateral to the detention and not the detention

itself."); *Morris v. Cain,* 186 F.3d 581, 585  n.6  (5th Cir. 1999).  Risley has not asserted an

error in the state habeas proceeding affecting the deference due the state courts' findings in

the habeas proceedings.

Risley has not shown a basis for granting habeas relief.

## VIII.   Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 11), is granted.

Risley's motion for summary judgment, (Docket Entry No. 16), is denied. Risley's petition

for a writ of habeas corpus is denied.  This case is dismissed.  Risley's motion for default

judgment, (Docket Entry No. 10), and motion for status, (Docket Entry No. 18), are denied.

Risley's motion to file supplement, (Docket Entry No. 14), is granted.   Any remaining

pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can

appeal the district court's decision.  28 U.S.C. § 2253(c)(1).  This court will grant a COA

only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2).  In order to make a substantial showing, a petitioner must demonstrate

that "reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When the district court

has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. As the Supreme Court made clear in its recent decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 1042.

Because Risley has not made the necessary showing, this court will not issue a COA.

SIGNED on September 16, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge